LABORDE, Judge.
Plaintiff-appellee, Grady McLendon, filed suit for worker’s compensation benefits against his employer, the State of Louisiana, through the Department of Natural Resources, Office of Forestry, after the benefits were terminated on July 17, 1985. The trial court found in favor of plaintiff and assigned reasons for: 1) adjudicating plaintiff totally and permanently disabled; 2) finding the State arbitrary and capricious in terminating the benefits; and 3) ruling that plaintiff’s retirement benefits could not be used to offset the supplemental earnings benefits under LSA-R.S. 23:1221(3). Defendant argues that these findings should be reversed. Plaintiff argues that these findings should be af *350 firmed; further, plaintiff answers the appeal to request additional attorney’s fees.
After reviewing the trial record and appellate briefs, we find no error in law or manifest error in fact. The judgment below is affirmed for reasons assigned by the trial court. These reasons are reproduced and annexed hereto. Plaintiff’s request for additional attorney’s fees is denied. Costs of this appeal are taxed to defendant. .
AFFIRMED.
APPENDIX
Grady McLendon
Versus
State of Louisiana, Department of Natural Resources, Office of Forestry
Civil Suit No. 21637
28th Judicial District Court
Parish of LaSalle
State of Louisiana
REASONS FOR JUDGMENT
This matter involves a claim for worker’s compensation benefits filed by GRADY MCLENDON against the STATE OF LOUISIANA, DEPARTMENT OF NATURAL RESOURCES, OFFICE OF FORESTRY, hereinafter referred to as the STATE. The PLAINTIFF claims he suffered a disabling injury on or about September 13, 1984, while in the course and scope of employment with the STATE.
MCLENDON was an employee of the STATE on September 13, 1984, being employed as a forest technician. His work history reflects that from 1955 to 1960 who as a parish deputy sheriff, from 1960 to 1980 he worked for the State Forestry Commission as an enforcement agent and from 1980 until September 13, 1984, his duties with the STATE included those being performed on the 13th of September, 1984, as well as fighting forest fires. ■
His position required heavy lifting and moving of material such as hay bail size pine straw, climbing fire towers, and constant walking over rough terrain. On occasion he would be called upon to collect seeds for nurserys. This would often require climbing the pine trees to collect the cones. The baskets of seeds collected weighed up to sixty (60) pounds.
When MCLENDON functioned as an enforcement officer, his tasks were no less physical. Enforcement required stakeout operations to stop timber arson. MCLEN-DON was required to walk to remote stakeout locations carrying the necessary equipment, and would be on stakeout location for hours, days, or even months.
On the day of the accident, MCLEN-DON was marking southern pine beetle damage to timber on school board property in Grant Parish. It was a hot and humid day with very little wind. As he and his crew started marking the timber, he began to feel dizzy and had difficulty focusing. He sat down for a few moments and then tried to return to work. Within five (5) minutes he began shaking all over, his vision again became blurred, his ears were roaring, and he was wet with sweat.
MCLENDON then started out of the woods to return to the truck. He became further disoriented and rambled into a thicket. He then fell into a ditch. MCLENDON continued toward the truck and further became nauseated, vomiting twice before reaching the truck.
When the other employees reached the scene, he told them of his difficulties and one of his coworkers drove him home.
Upon arriving home, MCLENDON’S wife carried him to LaSalle General Hospital where he was admitted for treatment. He was discharged on September 21, 1984, with a primary diagnosis of either strain of the lumbar region of the back or a compressive injury of the back due to the fall into the ditch.
MCLENDON was treated by the hospital physician; Dr. I.C. Tumley, a general practitioner. Dr. Turnley next saw MCLENDON on September 25, 1984. MCLENDON’S heat exhaustion recovery was complete but he still suffered from the back strain and numbness of the thigh and leg.
*351 On October 3, 1984, Dr. Turnley again saw MCLENDON. Although the primary difficulty was a sudden drop in blood pressure, he still complained of right leg pain which was associated with the accident. His leg difficulty was aggravated by walking or any sort of motion.
On October 23, 1984, MCLENDON was still complaining of leg difficulty and Dr. Turnley arranged an appointment for him with Dr. T.E. Banks, Jr., an orthopedic surgeon of Alexandria, Louisiana.
Dr. Banks first saw MCLENDON on October 29, 1984. His initial diagnosis was twofold. He felt that there was a possible peripheral neuritis related to a diabetic neuritis, together with some unilaterial sciatic irritation that suggested involvement of the L-4 nerve root. He then referred MCLENDON to a neurologist, Dr. Arsham N. Naalbandian in an effort to determine if there were two separate problems, and if so, to separate them.
Dr. Naalbandian saw MCLENDON on November 5, 1984. His impression was that of low back and right lower extremity pain with irritation of the L-4 nerve root. Additionally, he diagnosed a sensory peripheral neuropathy condition which he related to the diabetes.
On November 12, 1984, a CT scan was performed on the lumbar spine which reflected some arthritis on the right side of L-5 and S-l. An EMG was performed on November 21, 1984, to study the lower right extremity. The result of this test seemed to substantiate the L-4 pinched nerve on the right side.
On December 5, 1984, MCLENDON returned to Dr. Naalbandian with basically the same complaints as before. He was then referred back to Dr. Banks for a possible lumbar myelogram.
Dr. Banks again saw MCLENDON on January 16, 1985, and felt that he had greatly improved since the original visit and that there was a better than average chance that he would continue to improve to his pre-injury level within the next few months. He suggested reeváluation in a few weeks, but he has not seen MCLEN-DON since that time. Dr. Banks did not consider that surgery was necessary, but if the other possibility occurred (MCLEN-DON getting worse instead of better) then surgery might be warranted. When questioned concerning his ability to work in January of 1985, he stated the following:
A. Well, I felt that, as I mentioned a while ago, that he had about a fifty per cent chance of improving in the next three to six months back to his pre-injury level, at which I felt that he could do some work — yes. He would probably limited in work such as working overhead, repetitive lifting or operating some types of equipment in which a good bit of compression force is manifested. (Defendant Exhibit 1 — page 9)
During the period of evaluation by Dr. Banks and Dr. Naalbandian, MCLENDON continued to see Dr. Turnley. On December 19, 1984, Dr. Turnley still felt that MCLENDON had L-4 difficulty associated with this accident and felt that the specialist’s studies sustained this.
Dr. Turnley continued to treat MCLEN-DON and saw him professionally on January 23,1985, February 19,1985, and March 20, 1985. During these times MCLEN-DON’S condition continued to deteriorate, even to the point that he was unable to walk as suggested by Dr. Turnley.
Q. Doctor, was your opinion as far as a preliminary diagnosis at this time changed from that of a lumbar strain to something more serious?
A. Well, at that — I felt like that even though the diagnosis had been lumbar strain initially, there is also a possibility that as this thing progresses it could get better or if there was the possibility of a disc that it would usually get worse.
Q. And that was the case — (Interrupted).
A. And that was the case. (Plaintiff’s Exhibit 02 — page 14)
On April 17 and 19, 1985, Dr. Turnley found the pain to be more severe and MCLENDON was placed in a two bar support. The following visits continued on *352 May 1, 1985, May 3, 1985, and May 22, 1985. During these times Dr. Tumley began to treat MCLENDON for depression.
By June 26,1985, Dr. Turnley found that MCLENDON was doing much better, but continued to have severe pain in his leg from time to time. The remaining visits in 1985 included July 31, September 18, October 16, November 13, and December 11, MCLENDON’S condition did not improve to any significant degree.
In 1986 Dr. Tumley continued to see MCLENDON professionally. During these seven (7) visits MCLENDON still suffered from the same basic difficulties. Dr. Turn-ley last saw MCLENDON on October 14, 1986, and gave this diagnosis:
Q. Doctor, what is your diagnosis of Grady McLendon at this time?
.A. It is my opinion with what information I have that this man has a protruded or extruded disc in his lumbar area, aggravated by the usual degenerative changes which accompany a man this age. (Plaintiffs Exhibit 02 — page 28)
Relative to disability, Dr. Turnley made the following statement:
Q. Doctor, is it your opinion based on your history and examination and findings that Mr. McLendon has been totally disabled from the time of this accident, which was in September of 1984, until today?
A. Yes. Totally and completely.
Q. And he cannot do any sort of activity?
A. None. No — no significant activity.
Q. Has he improved any since his injury?
A. He improved for a short time and then he began to grow worse again. But he did not recover. He improved I would say slightly. (Plaintiffs Exhibit 02 — page 29)
The STATE paid worker’s compensation benefits and medical thru July 18, 1985, at the rate of $248.00 per week. At that time benefits were terminated based upon a medical report from Dr. Banks dated March 5, 1985, which stated in part that:
I suggested — that he return on or about 27 February 1985, if he had not been able to return to work by that time.
He did not return to the office on that date. (Defendant’s Exhibit 2).
The Court finds that MCLENDON has born his burden of proof in this matter. He was injured while in the course and scope of his employment and his current disability is total and complete as a result of that injury. See Louisiana Revised Statutes 23:1221. He is entitled to benefits from the date of termination of benefits (July 17, 1985), including all unpaid medical and weekly benefits at the rate of $248.00 per week with legal interest from due date of each payment until paid in full.
After benefits were terminated MCLENDON supplied the STATE with documentation from Dr. Turnley relative to his disability and requested reinstatement. The STATE refused although an additional $25.00 was paid to Dr. Turnley since July of 1985. The STATE’S procedure is to submit all claims to a claims council to receive available testimony and medical evidence to determine if future benefits should be paid. On August 6, 1985, the council made its decision based upon the Banks report. From that time forward, the council failed to consider any additional information relative to MCLENDON. This was despite the fact that the information was supplied by the treating physician. Had the council reviewed Dr. Turnley’s information and still not decided to reinstate benefits, this might not be considered arbitrary and capricious. But to fail to even consider new information (where medical conditions by their very nature are subject to interpretation and change) is clearly arbitrary and capricious. Therefore, MCLENDON is entitled to statutory penalties in the amount of twelve (12) per cent and attorney fees. Considering the degree of difficulty of a worker’s compensation claim, the number of depositions and trial involvement in this case, the Court establishes the fees at $2500.00.
DEFENDANT’S final argument is that it is entitled to an offset for retirement benefits currently being paid to MCLENDON.
*353 This argument is based on 23:1221 (3)(b) which reads as follows:
[[Image here]]
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employed, sheltered employment, and employment while working in any pain.
[[Image here]]
The reference to Subparagraph (3)(a) is to that section of 23:1221 which provides that when an employee’s injury results in an inability to earn wages equal to ninety per cent of wages at the time of injury, he is entitled to supplemental earnings benefits equal to seventy four percent of the difference between ninety percent of the average monthly wages at the time of injury and the average monthly wages which he later earns, or is able to earn.
The DEFENDANT did not plead this as a special defense, and the record is not even clear as to when the PLAINTIFF retired. He currently draws over $900.00 per month as retirement. It is these retirement benefits that the STATE construes as wages as allowed in Louisiana Revised Statutes 14:1221 (3)(b). The Court does not agree with this analysis. Supplemental Earnings Benefits was designed to cover claimants who, because of partial disability, must do work for less pay. Adams v. Fireman’s Fund Insurance Company, 214 So.2d 242 (La.Cir.App.1968). Retirement benefits are benefits previously earned and are not being currently earned.
Therefore, the Court awards worker’s compensation benefits at the rate of $248.00 per week from the date of termination, July 17, 1985, together with all unpaid medical, with legal interest from due date of each payment until paid in full. Additionally, PLAINTIFF is awarded statutory penalties and attorney fees in the amount of $2500.00.
Judgment to this effect will be signed upon presentation.
THUS DONE AND SIGNED in Chambers, this 24th day of March, 1987.
(s) JIMMIE C. PETERS District Judge