GUIDRY, Judge.
Defendants, Pineerest State School (Pine-crest) and the Office of Risk Management (ORM) appeal a decision of the Office of Worker’s Compensation (OWC) awarding plaintiff, Lena Kelone, temporary, total disability benefits for a month longer than that *90 paid by the ORM and supplemental earnings benefits thereafter until defendants find work for her in the geographical area and within her limitations or until she receives appropriate vocational rehabilitation to place her in a better and identified job market, plus penalties and attorney’s fees. We affirm.
At the outset, we note that, in brief, attorney for plaintiff prays for additional attorney’s fees both for his trial work and “... for answering this appeal”. As we find neither an appeal by plaintiff, nor an answer to appeal in the record, we will not consider 'those issues.

FACTS

Ms. Kelone was injured in the course and scope of her employment on April 21, 1989, when she slipped and fell backwards, landing on her buttocks, while in the kitchen at Pine-crest. Plaintiff had sustained a prior work-related injury to the thoracic area of her back in 1984 when she was struck by a patient. It does not appear from the record that Ms. Kelone received any worker’s compensation benefits for the earlier injury, but she was under constant medical care from the date of her injury until January 1989 when she was scheduled to have a first rib resection to relieve what had been diagnosed as thoracic outlet syndrome. That operation was indefinitely postponed when, during pre-op testing in the hospital, it was discovered that Ms. Kelone had a cardiac problem which would require by-pass surgery.
In this case the preexisting diagnosis of thoracic outlet syndrome (TOS) is significant in that some of the symptoms which plaintiff related to her fall in 1989 are some of the same symptoms as those of which she complained in connection with the TOS.
Ms. Kelone stated that she didn’t remember the exact date upon which she sought medical treatment after her April 1989 fall, but she did remember that it was Dr. Davidson, the same orthopedist who had treated her for TOS, whom she consulted. Plaintiff complained to Dr. Davidson of back and hip pain. Dr. Davidson treated her conservatively without success and, in August 1989, Ms. Kelone was referred to Dr. Luiz DeAraujo, a neurosurgeon in Lafayette, who saw plaintiff on two occasions. Ms. Kelone’s main complaint to Dr. DeAraujo was pain in her neck radiating into the base of the skull and both shoulders; however, she also maintained complaints of low back pain. Dr. DeAraujo could find no neurological basis for plaintiff’s complaints and suspecting soft tissue injury referred Ms. Kelone to Dr. Robert D. Franklin, a rehabilitative medicine specialist. Dr. Franklin became and is plaintiff’s primary treating physician.
Dr. Franklin first saw Ms. Kelone on August 17, 1989 on referral from Dr. DeAraujo for neck pain. At this time, Ms. Kelone was continuing to complain of low back pain, although her major complaint was related to her neck. Ms. Kelone had not mentioned her TOS problem to Dr. DeAraujo, neither did she mention it to Dr. Franklin. On this initial visit, Dr. Franklin detected muscle spasms in plaintiff’s neck. The spasms along with the patient’s history, as related to him, led Dr. Franklin to feel that Ms. Kelone was suffering from myofascial pain syndrome and he began a conservative course of treatment.
Between August 1989 and May of 1990, Ms. Kelone failed to progress as Dr. Franklin anticipated and, on the May 7, 1990 visit, Ms. Kelone’s complaints of severe neck pain prompted him to suggest a cervical MRI. When she returned for her June 13, 1990 visit with the same complaints, the MRI was ordered. However; the test was not performed until January 1991.
During this same period, ORM hired In-traeorp to manage Ms. Kelone’s case. Intra-corp sent plaintiff to Dr. M. Lawrence Drerup, a neurosurgeon, for an IME on February 6, 1990. Before the examination, Dr. Drerup had been supplied copies of some of plaintiff’s medical records including some of those of Drs. Davidson, DeAraujo and Franklin. Inasmuch as Ms. Kelone’s major complaints at this time centered around her neck, Intracorp specifically requested Dr. Drerup to evaluate her for any cervical problems. The medical records supplied were also limited to Ms. Kelone’s cervical problems.
After he completed his examination of Ms. Kelone, he reported to Ms. Cyndi Lyles of *91 Intracorp Ms diagnosis of mild chronic cervical myofascial strain. He relayed to Ms. Lyles that from a neurological standpoint there was nothing he could offer Ms. Kelone and that neurologically she appeared to have reached maximum medical improvement (MMI). He stated that he found no need for further cervical testing and recommended heat massage, range of motion exercises and over-the-counter anti-inflammatory medication for pain. On March 30, 1990, Dr. Drerup approved a job analysis form prepared by Ms. Lyles indicating that Ms. Kel-one could return to her former duties.
Based upon reports from Intracorp and Dr. Drerup, defendants terminated Ms. Kel-one’s compensation benefits on May 15, 1990 and refused to pay for the cervical MRI ordered by Dr. Franklin on June 13, 1990. During that same June visit, Dr. Franklin concluded that Ms. Kelone had reached maximum medical improvement as to her cervical problems. However, he opined that she could not engage in the physical activities required of her former job but rather was only capable of light or sedentary duties such as answering telephones, acting as a receptionist, etc.
Dr. Franklin’s second deposition was taken May 20, 1992, just two weeks before the OWC hearing. He continues to treat Ms. Kelone for the same symptoms.
Defendants did finally pay for a cervical MRI wMeh was done in January of 1991 and wMch revealed no disc problems, but did show minimal spondylosis or arthritis at C3-4, C5-6 and C6-7. As the cervical MRI showed no basis for Ms. Kelone’s continued complaints, Dr. Franklin recommended plaintiff take a function capacity assessment test. TMs was done on April 22 and 23,1991. The results, which were received by Dr. Franklin on May 6, 1991, support his conclusion that Ms. Kelone is capable of no more than light duty employment. Dr. Franklin maintains that his original assessment that Ms. Kelone had reached maximum medical improvement as of June 13, 1990 and was capable of light or sedentary employment at that time was correct.

ACTIONS OF THE OWC BEFORE THE COURT ON APPEAL

The hearing officer concluded that Ms. Kelone was temporarily and totally disabled through June 13, 1990, and that she was due SEB beginning June 14, 1990. The hearing officer also concluded that inasmuch as ORM received the treating physician, Dr. Franklin’s, report of his June 13, 1990 examination approximately June 27, 1990, and since that report clearly showed that Ms. Kelone was not capable of returning to her former employment at that time, ORM was, as of July 1, 1990, arbitrary and capricious in refusing to reinstate compensation benefits and/or in not ordering a functional capacities evaluation at that time.
Defendants-appellants argue that (1) the hearing officer erred in extending claimant’s TTD benefits from May 15, 1990 (the date they terminated benefits) to June 13, 1990 and awarding claimant SEB beginning June 14,1990; and, (2) the hearing officer erred in awarding penalties and attorney’s fees.

LAW

While Dr. Drerup, who was engaged specifically to perform an IME, stated that he felt from a neurological standpoint, that Ms. Kelone had reached maximum medical improvement in February 1990 and in March 1990 approved a job analysis form indicating claimant could return to her former duties, Dr. Franklin, plaintiffs treating physician never released Ms. Kelone to return to her former duties and it was not until June 13, 1990 that he opined she could even engage in light or sedentary duties.
In Streeter v. Sears, Roebuck and Company, Inc., 533 So.2d 54 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1255 (La.1989), a panel of this court stated:
It is well settled that the testimony of an attending physician should be accorded more weight and probative value than that of a physician who has made an examination solely for the purpose of giving expert testimony regarding a patient’s condition. Kay v. Home Indemnity Company, 313 So.2d 303 (La.App. 3 Cir.1975); Meche v. Maryland Casualty Company, 204 So.2d *92 719 (La.App. 3 Cir.1967), writ den., 251 La. 754, 206 So.2d 97 (1968).
Accordingly, we find no error in the OWC hearing officer’s finding that Ms. Kelone was due TTD benefits through June 13, 1990.
In awarding Ms. Kelone SEB beginning June 14, 1990, the hearing officer stated:
Although the claimant’s treating physician, Dr. Franklin, released her to light/sedentary duty, no evidence was found whereby the employer sought to have him approve any job analyses nor were any jobs found available for her in her living area. As the claimant has only an Eighth Grade education and limited physically, vocational rehabilitation would be the best chance of securing suitable employment.
Considering the deference given the treating physician’s opinion and the wide latitude accorded the trier of fact, we cannot say that the award of SEB beginning June 14, 1990 was manifestly erroneous.
As to the question of penalties and attorney’s fees, it is well settled that antecedent to such award the employer must first have been found arbitrary and capricious in terminating or refusing to reinstate a claimant’s benefits. In McLendon v. State, Department of Natural Resources, Office of Forestry, 532 So.2d 349 (La.App. 3rd Cir. 1988), this court was presented with a factual scenario similar to that herein. We affirmed the judgment of the district court in McLen-don, supra, publishing the trial judge’s reasons for judgment as an appendix. We quote, approvingly, from those reasons:
After benefits were terminated MCLENDON supplied the STATE with documentation from Dr. Tumley relative to his disability and requested reinstatement. The STATE refused although an additional $25.00 was paid to Dr. Turnley since July of 1985. The STATE’S procedure is to submit all claims to a claims council to receive available testimony and medical evidence to determine if future benefits should be paid. On August 6, 1985, the council made its decision based upon the Banks report. From that time forward, the council failed to consider any additional information relative to MCLEN-DON. This was despite the fact that the information was supplied by the treating physician. Had the council reviewed Dr. Turnley’s information and still not decided to reinstate benefits, this might not be considered arbitrary and capricious. But to fail to even consider new information (where medical conditions by their very nature are subject to interpretation and change) is clearly arbitrary and capricious.
McLendon, supra, at 352. Additionally, in Slate v. Travelers Insurance Company, 556 So.2d 903 (La.App. 3rd Cir.1990), we stated:
If, subsequent to an initial optimistic report, an insurer receives medical information indisputedly showing disability at a particular date, the insurer may not blindly rely upon the earlier report and solely on its basis avoid penalties for arbitrary nonpayment of compensation benefits. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976) and its progeny. Although Travelers initially reasonably controverted plaintiffs entitlement to compensation, this action should not protect it against future penalties pursuant to La. R.S. 23:1201(E) in light of the latter developments in this case. See Malone and Johnson, Worker’s Compensation, § 389, at 107.
See also Domingue v. Hartford Insurance Comp., 568 So.2d 221 (La.App. 3rd Cir.1990), writ denied, 571 So.2d 654 (La.1990).
The situations presented and the resolutions in McLendon and Slate, supra, convince us the results reached by the hearing officer on the questions of penalties and attorney’s fees in this case are not clearly wrong.
For the reasons stated, we affirm the decision of the hearing officer. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.