602 So.2d 1133 (1992)
Glenn TANNER[1]
v.
INTERNATIONAL MAINTENANCE CORPORATION.
No. CA 91 1362.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*1134 Law Offices of Robert J. Caluda & Assoc., Troy G. Broussard, New Orleans, for plaintiff-appellee Glenn Tanner.
Mathews, Atkinson, Guglielmo, Marks & Day, Daniel R. Atkinson, Sr., Baton Rouge, for defendant-appellant Intern. Maintenance.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment in favor of Glenn Tanner, awarding him compensation benefits for temporary total disability and medical expenses, and denying penalties and attorney's fees.[2] For the following reasons, we reverse the compensation award and affirm the award of medical and prescription expenses.

FACTS AND PROCEDURAL HISTORY
Glenn Tanner was a pipefitter employed by International Maintenance Corporation (IMC). On or about May 17, 1990, Tanner sustained an on-the-job injury to his right foot, when a steel door was accidentally dropped on his foot.[3] Tanner immediately reported the incident to Mr. Alvin Moak, his supervisor, who brought Tanner to see Mr. Donald Featherston, the safety supervisor, and first-aid was administered. Tanner was not seen by a doctor that day, and continued his work duties.
On May 21, 1990, Tanner was still experiencing pain in his foot, and was taken by Mr. Featherston to Dr. Thibodeaux.[4] The doctor indicated he could return to regular work. Tanner returned to work and was placed on light duty in a seal and valve room. His job duties involved monitoring equipment and machinery, a job performed while seated.
On June 26, 1990, Tanner was treated by Dr. John Fraiche, a family practitioner. *1135 He allowed Tanner to return to work with the restriction that he not engage in prolonged standing or walking. He also directed that plaintiff should elevate his foot when possible. On July 10, 1990, Dr. Fraiche referred Tanner to Dr. Bryan Griffith, an orthopedist.
On July 11, 1990, Tanner was treated by Dr. Griffith, who examined plaintiff and took x-rays. He determined that Tanner had sustained a soft tissue injury, and molded an orthotic, which was placed in Tanner's tennis shoe. A bone scan was also performed and showed no sign of fracture or bony injury. He allowed Tanner to return to work on light duty. On July 18, 1990, plaintiff returned to Dr. Griffith's office, complaining that the orthotic was not improving his symptoms. Dr. Griffith recommended anti-inflammatory medication and advised Tanner to refrain from climbing or prolonged standing. On August 1, 1990, and August 15, 1990, Tanner returned and was still complaining of pain.
Dr. Griffith testified that he considered Tanner's complaints of pain to be "out of proportion" to his physical findings. However, Tanner was put in a short leg walking cast, which was removed on August 30, 1990. Dr. Griffith again took x-rays. Finding no change in plaintiff's condition or complaints of pain, Tanner was examined, at Dr. Griffith's request, by Dr. James Beskins, an associate, who found no objective symptoms. Tanner's last visit to Dr. Griffith was on September 19, 1990. Dr. Griffith acknowledged that Tanner's prolonged complaints were unusual for a soft tissue injury.
Dr. Griffith testified that at all times during his treatment of Tanner, plaintiff was able to perform sedentary work, and was released for light duty, subject only to restrictions regarding prolonged walking and stair climbing. Dr. Griffith testified that although plaintiff was not anxious to return to work, even on light duty, Tanner was nonetheless able to perform sedentary work, even with the short leg cast.
Tanner was dissatisfied, and thereafter sought treatment from Dr. Kenneth Adatto, an orthopedic surgeon. Dr. Adatto saw plaintiff on three occasions. At the first visit, on September 10, 1990, Tanner complained of numbness and discomfort in his foot. The examination was normal and Dr. Adatto could find no objective findings to support plaintiff's subjective complaints. He suggested plaintiff undergo a thermogram or a venogram, and referred Tanner to Dr. Maria Palmer, a neurologist. On the November 15, 1990 visit, Tanner continued to complain of pain in his foot. He returned to Dr. Adatto's office on December 5, 1990, after being seen by Dr. Palmer. Dr. Adatto reviewed the EMG and nerve conduction studies ordered by Dr. Palmer, which provided objective findings in support of Tanner's subjective complaints.
Dr. Adatto testified that until Tanner's condition and appropriate treatment were determined, he considered Tanner to be totally disabled. However, on cross-examination, he admitted that his evaluation of Tanner's disability rating related to his previous job as a pipefitter. Dr. Adatto stated that, assuming a light duty job was available, Tanner could perform sedentary work without restriction. He stated that he considered himself Tanner's treating physician, and related at trial that he expected to see Tanner again on January 11, 1991.
Dr. Maria Palmer, a neurologist, testified that she saw Tanner initially on October 15, 1990. He complained of numbness, pain and episodes of swelling in his foot. Dr. Palmer's first impression was that Tanner had injured a superficial nerve, and had tarsal tunnel syndrome. She prescribed pain medication, and scheduled nerve conduction studies, which were performed at her office on November 13, 1990, by her associate, Dr. Richard Palmer. The studies revealed that Tanner was not suffering from tarsal tunnel syndrome, but indicated a neuropathy. However, the neuropathy could not be explained on the basis of the study of one extremity. Therefore, a conduction study of the opposite extremity was performed to determine whether the neuropathy was accident related. She also ordered tests to rule out diabetes or other disorder that could cause damage to the peripheral nerves. Tests were performed *1136 on December 3, 1990, at East Jefferson General Hospital and revealed that Tanner was anemic and had a vitamin B-12 deficiency. Dr. Palmer additionally recommended a "Schilling Test" to determine if Tanner had pernicious anemia, or inability to absorb vitamin B12. However, at the time of trial this test had not been performed.
After reviewing the nerve conduction studies accomplished on the left extremity, Dr. Palmer concluded that Tanner suffered from a pre-existing and undiagnosed neuropathy, which was complicating his foot injury and causing the injury to take longer to heal. She opined that with vitamin therapy, Tanner should have complete recovery in two to three months. She distinguished this condition from the post-traumatic neuropathy, which she diagnosed and attributed to the direct injury to the nerve suffered by plaintiff in the accident.
She testified that Tanner should not climb, or work at great heights, but should walk as part of his rehabilitation. She placed no restrictions on his ability to perform sedentary work, such as sitting at a work bench observing the buffing operations of his employer's machinery.
Tanner's supervisors testified that IMC offered him light duty work in a "seal room" where he was required to observe company machinery, while remaining seated and with his foot elevated. Tanner testified that he could only wear the tennis shoes containing the orthotic support. He asserted that he was unable to perform the job offered, because he could not wear safety boots, which he contends were required for employment. However, IMC's mechanical superintendent, safety supervisor, and maintenance supervisor, each testified that Tanner was allowed to report to duty in tennis shoes.
Donald Featherston, the safety supervisor for IMC, testified that the safety shoe requirement was dependent on the area of the plant in which one worked, and that the "seal room" was exempt from the requirement. He further stated that the "no tennis shoe policy" encouraged at the plant, was specifically waived for Tanner.
Tanner earned $9.91 per hour during the brief time he worked in the "seal room" following the accident. Prior to the accident, Tanner was earning $9.66 per hour. His last full day on the job was July 11, 1990. IMC requested that Tanner return to work, and informed him of the availability of the "seal room" job and the waiver of the safety boot requirement. Tanner, however, never returned to work and filed a claim for benefits on July 13, 1990. Following the accident, Tanner worked as a marshall for Louisiana State University, and supervised a plumbing job, for which he was paid.
Trial was held on December 20, 1990. Judgment was rendered in favor of Tanner and against IMC ordering payment of benefits for temporary total disability, and medical expenses.
IMC appeals, specifying three assignments of error, as follows:
1. The hearing officer erred in the application of evidentiary rules concerning the burden of proof required in this case.
2. The hearing officer erred in allowing Temporary Total Disability (TTD) benefits for more than six (6) months from date of injury and did not apply rules of law applicable to Supplemental Earnings Benefits (SEB).
3. The hearing officer erred in allowing an award for medical expenses in that this was not necessary medical treatment and was for evaluation purposes of this litigation.

ASSIGNMENT OF ERROR NO. ONE
IMC asserts that the hearing officer erred in the application of evidentiary rules concerning the burden of proof required in this case.
The hearing officer, in his conclusions of law, stated:
The burden of proof in a workmans' compensation [sic] is on the claimant and he must prove his case by a preponderance of evidence. He must prove the following chain of causation: the accident is work related; the accident was the cause of his injury and the injury *1137 caused his disability. The undersigned has determined that the claimant has carried his burden of proof ...
LSA-R.S. 23:1221(1) provides, in pertinent part:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
* * * * * *
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (emphasis added).
The above quoted statute reflects legislative amendments which were made in 1989, effective January 1, 1990. These amendments set forth a more stringent standard of proof for a claimant seeking disability benefits based on a temporary total disability. Prior to the 1989 amendments, the burden of proof in a claim for temporary total disability benefits was by a "preponderance of the evidence". However, under the statute, as amended, the claimant must prove the nature and extent of his disability by clear and convincing proof, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment.
The statute contemplates that an employee, as here, may be able to prove by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. The 1989 amendments to LSA-R.S. 23:1221(1) did not alter this burden of proof. However, in the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant's demand for temporary total compensation benefits, must fail.
LSA-R.S. 23:1031 A provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
This statute sets forth the threshold requirements which must be met by a claimant to fall within the coverage of the Workers' Compensation Act. Once an employee satisfies these threshold issues required by LSA-R.S. 23:1031, he has proven that he is covered by the workers' compensation laws. The employee may be entitled to medical benefits pursuant to LSA-R.S. 23:1203 and/or disability benefits pursuant to LSA-R.S. 23:1221. To receive disability benefits based on a temporary total disability, however, the claimant must satisfy the requirements of LSA-R.S. 23:1221(1), by clear and convincing evidence.
Applying this statutory framework, we find that the hearing officer committed legal error in applying a preponderance of the evidence standard of proof to the final element of Tanner's claim, i.e., that he is physically unable to engage in any employment.
When the court of appeal finds that a reversible error of law was made in the proceedings below, it is required to redetermine *1138 the facts de novo from the entire record and render a judgment on the merits. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Thus, our mandate in this regard is to determine whether Tanner proved by clear and convincing evidence that he is unable to engage in any employment or self-employment.
Considering the lay and expert testimony in the record, we find that claimant failed to carry his burden of proof. The doctors were unanimous in their opinion that Tanner was able to perform sedentary work, during the time for which he seeks disability benefits. The record also shows that IMC had work available for Tanner which was clearly within the restrictions placed upon him by the various doctors. IMC introduced a videotape of a co-employee performing the sedentary work that was offered to Tanner, which shows that the work duties could be accomplished within his restrictions.
Tanner testified that he could not engage in the job offered to him because he could not wear safety boots and claimed that he was required to do so by his employer. This testimony is directly contradicted by IMC's safety supervisor, Donald Featherston, and the maintenance supervisor, Alvin Moak, who both testified that Tanner was not required to wear safety boots in the "seal room" and that Tanner was told that the requirement that he wear the safety boots was specifically waived.
The medical testimony establishes that plaintiff was able to engage in the type of sedentary employment made available to him by IMC. Therefore, we conclude that plaintiff was not totally disabled, within the meaning of the statute, and reverse the judgment of the hearing officer insofar as it awarded him benefits for temporary total disability.
Thus, this assignment has merit.

ASSIGNMENT OF ERROR NO. TWO
IMC urges that the hearing officer erred in awarding temporary total disability benefits for a period in excess of six months from the date of injury. We pretermit this issue. IMC also urges that the hearing officer did not apply the rules of law applicable to supplemental earnings benefits. However, we find that plaintiff is not entitled to supplemental earnings benefits because his earnings would not have decreased had he accepted the job offered to him by IMC.

ASSIGNMENT OF ERROR NO. THREE
Finally, IMC contends that the hearing officer erred in allowing an award for medical expenses because the medical expenses were not incurred for necessary medical treatment and were incurred for evaluation purposes in preparation for litigation. The hearing officer rendered judgment ordering defendant to pay "medical bills in connection with his foot injury."
Pursuant to LSA-R.S. 23:1031 and LSA-R.S. 23:1203, a claimant is entitled to payment of necessary medical expenses once he has proven, by a preponderance of the evidence, that he has sustained a work related accident causing personal injury.
LSA-R.S. 23:1203 A provides, in pertinent part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...
Here, it is undisputed that Tanner sustained an injury to his right foot through a work related accident. Therefore, he is entitled to payment of necessary medical expenses. IMC paid the bills incurred from Tanner's visits to Drs. Thibodeaux, Fraiche and Griffith, and contends that it has fulfilled its obligation to plaintiff to pay necessary medical expenses. IMC contends that the expenses incurred in connection with the visits to Drs. Adatto and Palmer and the tests performed at their request constitute expenses incurred for evaluation and litigation purposes, and therefore are not recoverable.
LSA-R.S. 23:1203 only requires that an employer pay for "necessary medical *1139 services". We recognize that the employer and his insurer are not obligated to pay the bills of physicians consulted by the employee at the request of the employee's attorney for evaluation purposes. Price v. Fireman's Fund Insurance Company, 502 So.2d 1078 (La.1987). However, the expenses incurred in diagnosing Tanner's condition were necessary, and we conclude that the disputed medical expenses and prescriptions incurred in the diagnosis and treatment of Tanner are reimbursable.
Thus, this assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we conclude that the hearing officer erred in awarding Tanner disability benefits. The judgment of the hearing officer is reversed insofar as it awarded Tanner disability benefits. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally between the parties.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] Although plaintiff is referred to as Glenn Tanner, the record shows that his real name is Glen R. Tanner.
[2] In his written reasons for judgment, the hearing officer awarded plaintiff the sum of $5,813.94 for compensation benefits, plus "provable medical cost [sic] for the treatment of his injured foot including travel and prescriptions." However, the "AMENDED JUDGMENT" only refers to an award for temporary total benefits and payment of medical bills in connection with his foot injury, plus costs. Where there is a discrepancy between the judgment and the written reasons for judgment, the judgment prevails. Louisiana Insurance Guaranty Association v. International Insurance Company, 551 So.2d 50 (La.App. 1st Cir.1989).
[3] Tanner asserts that the accident at issue herein occurred on May 15, 1990. IMC asserts that the accident occurred on May 17, 1990, as reflected in the accident report. This discrepancy is of no consequence, as it is undisputed that an on-the-job accident occurred. Moreover, the same provisions of law apply regardless of whether the accident occurred on May 15, 1990, or May 17, 1990.
[4] Dr. Thibodeaux' full name does not appear of record.