638 So.2d 658 (1994)
CITY OF CROWLEY, Plaintiff-Appellee,
v.
Clopha COMEAUX, Defendant-Appellant.
No. 93-1116.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Writ Denied June 24, 1994.
*659 Christopher Richard Philipp, Lafayette, for City of Crowley.
Michael Benny Miller, Crowley, for Clopha Comeaux.
Before GUIDRY and LABORDE, JJ., and CULPEPPER, J. Pro Tem.[1]
LABORDE, Judge.
In this workers compensation proceeding, claimant appeals from the hearing officer's finding him permanently totally disabled and thus subject to an offset against the Social Security disability benefits he is receiving. Our review of the evidence yields no rational basis for the conclusion reached by the hearing officer that Comeaux was permanently totally disabled; nonetheless, we reverse solely on grounds that the hearing officer failed to consider whether claimant could be rehabilitated in accordance with the provisions of LSA-R.S. 23:1226.

FACTS
Claimant, a former technician possessing some education in electronics, was injured April 25, 1990, while employed as a laborer by the City of Crowley. He had been receiving $112.01 per week for his disability when his employer filed a Form 1008 and accompanying petition styled "Petition for Workers Compensation Offset" that forms the basis of this appeal.
At trial, Mr. Comeaux's employer argued that Comeaux was permanently totally disabled, a prerequisite for the City of Crowley's offset under LSA-R.S. 23:1225 A. An employee of the Social Security Administration and Mark Chearis, a vocational rehabilitation counselor retained by the City of Crowley, were the only two witnesses to testify in support of Comeaux's employer. The only other evidence introduced were the medical reports of plaintiff's treating physician, Dr. Heard.
Ms. Peggy Love of the Social Security Administration only attested to the Social Security benefits Comeaux received. She offered no testimony as to whether Comeaux was temporarily or totally permanently disabled or deserving of rehabilitation. This obligation was left to Mr. Chearis and the medical records placed into evidence.
Mr. Chearis opined that Mr. Comeaux was permanently (not temporarily) totally disabled. Under oath, he testified that in his opinion the injured worker would never again be able to work. By the retained consultant's own admission, his opinion was based solely on the medical records of plaintiff's treating physician Dr. Heard, from a brief *660 meeting he had with the doctor, and another brief conference with the mayor of Crowley.
According to Chearis' testimony, owing to Comeaux's limited training and the severity of his disability, the only job offer that could be located for Comeaux was as a utility worker with his former employer; however, even this possibility, according to Chearis, was subsequently ruled out by Dr. Heard's restricting claimant to light sedentary employment with no repetitive squatting, stooping, bending, or prolonged standing. Chearis never met with Comeaux personally, never attempted to locate other positions for which the claimant might be suited, and never inquired into vocational training opportunities before pronouncing his professional verdict.

DISCUSSION
Appellant makes at least two persuasive arguments, including ones related to the sufficiency of evidence and the propriety of the hearing officer's declaring him permanently totally disabled. We choose to address the second and pretermit the others.

Rehabilitation
In her written reasons, the hearing officer concluded that claimant was unemployable due to his age of 51 years, his limited (8th or 9th grade) education, medical reports, and the testimony of the vocational rehabilitation expert. In his first assigned error, Mr. Comeaux argues, correctly we find, that the hearing officer erred in finding him permanently totally disabled without first determining that there was no reasonable probability that Mr. Comeaux could achieve suitable gainful employment, especially in light of certain concededly obsolescent vocational training he had received long before.
Prior to the 1983 Act's effective date, employers were not required to offer their injured workers rehabilitation services. See, e.g., Koslow v. E.R. Desormeaux, Inc., 428 So.2d 1275 (La.App. 3d Cir.1983). The law is now emphatically different. In pertinent part, LSA-R.S. 23:1226 today provides as follows:
§ 1226. Rehabilitation of injured employees
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
(2) Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.
(3) The employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for worker's compensation benefits.
Erroneously, the hearing officer pronounced appellant permanently totally disabled without first determining whether rehabilitation would be beneficial to the claimant (and, in a greater sense, to society) as required by law:
D. Prior to the hearing officer adjudicating an injured employee to be permanently and totally disabled, the hearing officer shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee *661 may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
In Louisiana, an employee suffering a compensable injury which precludes him from earning wages equal to those earned pre-injury shall be entitled to prompt rehabilitation services, LSA-R.S. 23:1226 A.
In other words, if the employee has suffered an injury which reasonably precludes the employee from earning wages equal to wages earned prior to the injury, then the employee is entitled to training and education for reasonably attainable employment which offers an opportunity to restore the employee as soon as practical to his average earnings at the time of injury. If the injury is such that employment at similar wages is not reasonably attainable, then the employee has met his burden and is entitled to rehabilitation services.
Frazier v. Conagra, Inc., 552 So.2d 536, 544-545 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990) (emphasis underscored).
The goal of rehabilitation services is to return a disabled worker to work as soon as possible after an injury occurs, LSA-R.S. 23:1226B(1), when necessary, through true rehabilitation or education, Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3d Cir1993); Frazier, supra, at 544. The use of sham rehabilitation by an employer in a workers compensation proceeding will not be rewarded by the termination or diminution of an employee's benefits; instead, when prayed for, it will be greeted with statutory penalties and attorney fees. Hopes, supra; Kreider v. Schulin's Appliance Service, Inc., 524 So.2d 153 (La.App. 4th Cir.1988).
It is difficult to overstate the importance of closely adhering to the mandatory provisions of LSA-R.S. 23:1226. An employer's requirement to retain a vocational counselor "to evaluate and assist the employee in his job placement or vocational training," and in good faith, is at least as vital to the validity of an offset proceeding arising under LSA-R.S. 23:1225, when it is in the worker's interest to obtain honest job placement and vocational rehabilitation advice, as is the testimony of the vocational expert to the employer seeking to defeat or reduce an injured worker's claim to compensation benefits in the usual LSA-R.S. 23:1221 context.[2]
In recognition of this reality, strict adherence to both the letter and spirit of the mandatory provisions of LSA-R.S. 23:1226 is more than justified; it is required. LSA-R.S. 23:1226D. The general rule is that *662 workers compensation laws are to be liberally construed in favor of the claimant. Broussard v. Hollier Floor Covering, Inc., 602 So.2d 1023, 1029 (La.App. 3d Cir.1992); Hill v. L.J. Earnest, Inc., 568 So.2d 146, 151 (La.App. 2d Cir.), writ denied, 571 So.2d 652 (La.1990). Although this rule does not extend to relax the burden of proof in workers compensation matters, Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 279-280 (La. 1993), it remains operative to this day as to procedure. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974); Smith v. Mercy Hosp., 597 So.2d 114, 117 (La.App. 4th Cir. 1992); Bistes v. Asplundh Tree Expert Co., 499 So.2d 402, 404-405 (La.App. 4th Cir. 1986).
Consistent with the long-held jurisprudence of this state, the legislature has underscored the importance which attaches to workers compensation procedure in its enactment of LSA-R.S. 23:1226. When the wording of a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4. The workers compensation laws of our state clearly state that injured workers "shall be entitled to prompt rehabilitation services" to return them to work as soon as possible. LSA-R.S. 23:1226. It further requires that, prior to adjudicating an injured worker permanently and totally disabled, the hearing officer "shall" determine whether there is a reasonable probability that the injured worker could be rehabilitated. LSA-R.S. 23:1226D. The word "shall" means mandatory. LSA-R.S. 1:3. The inescapable conclusion to be drawn from these pronouncements is that rehabilitation in conformity with LSA-R.S. 23:1226 is preferred, and a premature finding of permanent total disability will not stand, as it is without the procedural foundation called for by the mandatory provisions of LSA-R.S. 23:1226.
Our thoughtful consideration of each of the criteria enumerated by the hearing officer's reasons for judgment leads us to the unavoidable conclusion that the hearing officer simply overlooked consideration of even the possibility of claimant's rehabilitation. Therefore, the offset is vacated. See Ceasor v. Belden Corp., 536 So.2d 1261, 1268-69 (La.App. 3d Cir.1988) (on rehearing).
Claimant's having only an eighth grade education does not necessarily preclude his ability to learn. Nor does his physical condition. Even if the worker at time of hearing is totally disabled, that finding alone does not mean that he is permanently totally disabled, see, e.g., Price v. Fireman's Fund Ins. Co., 502 So.2d 1078, 1080 (La.1987), especially here, where by far the most recent medical report contained in the record states that Mr. Comeaux in the future would be capable of light and sedentary activities.
Likewise we find at odds with this state's workers compensation law the hearing officer's conclusion that the other evidence supported the conclusion that claimant would be forever disabled. Claimant's vocational training since grown stale and previous work history actually earning a living in his trained field for more than ten years does not favor consignment of the injured worker to the pool of the permanently totally disabled. Consistent with the goals of rehabilitation mandated by LSA-R.S. 23:1226, we view these factors differently, as signals of an employee's interest, willingness in, and probability of, becoming vocationally relevant once again.
Advancing age is the last consideration articulated by the hearing officer for finding the employee permanently totally disabled. Certainly, an injured employee's having reached the age of 52 years does not alone condemn the worker to be forever a surplus member of our economy, with all its implications. In this state, nation, and age, no person shall be denied the equal protection of the laws, and no law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of age. See, e.g., LSA-Const. Art. 1, Section 3 (1974). Similarly, no adjudication by court or administrative body will be tolerated which affronts the bedrock principles embodied in the Louisiana Constitution's Article 1 Declaration of Rights, including its passages which guard against discrimination against groups or individuals, as those rights are inalienable and to be preserved inviolate by the state. LSA-Const. *663 Art. 1, Section 1 (1974). It has become common knowledge of late that the vast technological changes afoot will spare little quarter to those unable to adapt vocationally to the sea changes that are afoot, and the workers compensation and other laws of this state contemplate that every worker regardless of age or class be able to pursue the increasingly indistinguishable hopes of rehabilitation and reemployment. Consistent with this public policy, LSA-R.S. 23:1226 prohibits premature removal from the workforce of individuals susceptible to meaningful training and rehabilitation.

Conclusion
Absent any evidence to support the notion that a claimant will be forever disabled, or is unable or unwilling to learn a new compensable skill or polish the old one he already has, every procedural precaution must be taken to ensure that an injured worker in this State is not prematurely declared permanently and totally disabled. In this case, the hearing officer clearly failed to consider the possible benefits of rehabilitation and retraining, and this failure alone constitutes reversible error under LSA-R.S. 23:1226.
Furthermore, the only evidence introduced by his employer has convinced us that Comeaux is unable to return to work without additional training. By defendant's own admission, claimant cannot return to his old position, his old position cannot be modified to suit his physical condition, and no jobs are available to suit claimant's present skills. Referring to LSA-R.S. 23:1226B, the statute which pertains to the rehabilitation of injured workers, we hold that claimant is entitled to retraining under LSA-R.S. 23:1226(B)(1)(e) or (f). On remand, the hearing officer is ordered to reopen the case solely to determine the type and duration of vocational training claimant is to receive. Plaintiff has not requested penalties or attorney fees and therefore is entitled to none.

Decree
Claimant is to be offered short-term or long-term retraining in accordance with this decision and LSA-R.S. 23:1226. Employer to pay all costs of these proceedings.
REVERSED AND REMANDED WITH ORDER.
GUIDRY, C.J., concurs and assigns reasons.

APPENDIX

No. 93-519

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

NOT DESIGNATED FOR PUBLICATION

Feb. 2, 1994

WILLIAM C. CLARK

PLAINTIFF-APPELLANT

VERSUS

TOWN OF BASILE & RISK MANAGEMENT

DEFENDANT-APPELLEE

APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION ADMINISTRATION, DISTRICT THREE, HONORABLE MARK ZIMMERMAN, ADMINISTRATIVE HEARING OFFICER, PRESIDING.

Before LABORDE, THIBODEAUX and DECUIR, Judges.
DECUIR, Judge.
This is a worker's compensation case. William C. Clark injured his right knee on November 26, 1989, while in the course and scope of his employment as a police officer for the Town of Basile. Mr. Clark received temporary total disability benefits until September 1991, when supplemental earnings benefits were instituted. Thereafter, plaintiff filed a petition alleging he was entitled to temporary total disability benefits and to penalties and attorney's fees for defendant's alleged arbitrary and capricious modification of benefits from temporary total benefits to supplemental earnings benefits.
After a trial on the merits on May 21, 1992, the rehearing officer rendered judgment in favor of defendant. Plaintiff *664 appeals contending that the hearing officer erred in finding the testimony of defendant's vocational expert sufficient to establish plaintiff's ability to earn $800.00 per month in employment proven available to plaintiff in his community or reasonable geographic region pursuant to LSA-R.S. 23:1221(3)(c)(i)(2); in failing to find plaintiff temporarily totally disabled pursuant to LSA-R.S. 23:1221(1) in light of evidence of plaintiff's inability to engage in any employment, and in light of the fact his physical condition has not resolved itself to the point where a reasonable, reliable determination of the extent of disability could be made and continued regular treatment by a physician was no longer required; in failing to consider plaintiff's pre-existing hyperthyroidism in determining employment plaintiff is physically able to perform; in failing to find a "reasonably possible" causal connection between the aggravation of plaintiff's hyperthyroidism and the work-related injury, thereby rendering plaintiff temporarily totally disabled due to a combination of the pre-existing hyperthyroidism and the work-related injury; and in failing to award penalties and attorney's fees.
The issues presented on appeal are questions of fact. A Court of Appeal may not set aside findings of fact in the absence of manifest error, and where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After Mr. Clark's work-related accident, he was seen by Dr. Bobby Deshotel who eventually referred Mr. Clark to Dr. Stephen Nason, orthopedic surgeon. Arthroscopic surgery was performed on the right knee on March 2, 1990. A second procedure was performed on the same knee on December 27, 1990. In September 1991, Dr. Nason was of the opinion that Mr. Clark had reached maximum medical improvement. Mr. Clark complained of left knee problems to Dr. Nason for the first time in October 1991. Dr. Nason related the left knee problem to the injury to the right knee in that the right knee problems required Mr. Clark to place more weight and stress on the left side in favoring the right knee. Dr. Nason's deposition was taken just prior to trial. Dr. Nason testified that on plaintiff's last visit on April 10, 1992, Mr. Clark was still experiencing some left knee problems, but Dr. Nason did not recommend surgery and the left knee problems did not change his opinion of Mr. Clark's disability status rendered in September 1991. As of the date of his deposition Dr. Nason was of the opinion that Mr. Clark can work in a sedentary capacity despite the left knee complaints. Dr. Nason's final report on April 10, 1992, indicates no ongoing treatment, only that Dr. Nason would continue to follow Mr. Clark. Mr. Clark also testified that no additional treatment has been recommended for his knees.
Mark Cheairs was retained to provide rehabilitation services to plaintiff. In September 1991, Mr. Cheairs met with Dr. Nason at which time Mr. Cheairs presented Dr. Nason with job descriptions of employment available to Mr. Clark in the Lafayette and Abbeville areas. This employment consisted of four jobs, including two jobs as a life and health insurance agent, independent insurance agent, and sales agent of life and health insurance. Evidence in the record reflects that these employment positions would offer earnings at a minimum of $800.00 per month. We note that Mr. Clark was previously employed by Allstate Insurance Company in 1970 as an insurance sales agent. Dr. Nason approved the insurance employment positions presented by Mr. Cheairs. Dr. Nason testified at the time of his deposition in May 1992, he would still approve the insurance employment positions presented by Mr. Cheairs, and that he is of the opinion plaintiff can perform these jobs notwithstanding plaintiff's left knee complaints. No medical evidence was presented to dispute Dr. Nason's opinion. We note Mr. Cheair's testimony that there are other jobs available to Mr. Clark in the labor market. Mr. Cheairs testified that given Mr. Clark's transferable skills, educational background, and demonstration of satisfactory performance on other jobs, Mr. Clark has a very good vocational profile. Based on Mr. Cheairs' reports and Dr. Nason's opinion that Mr. Clark could perform the jobs available, benefits were modified from temporary total benefits to supplemental earnings benefits.
*665 At the outset, we conclude that the record does not support an award of penalties and attorney's fees and affirm the denial of same. We also affirm the hearing officer's finding that the plaintiff's thyroid condition is not a result of plaintiff's work-related injury. We address plaintiff's remaining assignments of error as follows.
The record reflects that Mr. Cheairs did not consider plaintiff's pre-existing thyroid condition in determining job availability. The hearing officer likewise erroneously failed to consider plaintiff's pre-existing hyperthyroidism in his finding that jobs are reasonably available to the plaintiff. For accidents occurring prior to January 1990, the odd-lot doctrine is applicable. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267, 1272 (La.App. 3d Cir.), writ denied, 487 So.2d 312 (La.1986). The hearing officer should have required evidence as to plaintiff's employability with the hyperthyroidism. Also, since the hearing officer did not attempt to decide the case in accordance with the odd-lot doctrine, we remand for a determination of eligibility of benefits consistent with this opinion. We affirm in part, reverse in part, and remand for a determination of eligibility of benefits consistent with this opinion.
Affirmed in part, reversed in part, and remanded. Costs of appeal are assessed one-half to each party.
GUIDRY, Chief Judge, concurring.
I concur to offer the following additional reasons for reversal of the hearing officer's judgment.
The burden required for proof of permanent total disability is set forth in La.R.S. 23:1221(2)(c) as follows:
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
This burden of proof rests with the plaintiff-worker who seeks a declaration of permanent total disability but likewise rests with the employer who seeks such declaration in order to claim an offset under La.R.S. 23:1225A. The evidence presented in this case is certainly far from "clear and convincing" that the defendant is permanently totally disabled.
NOTES
[1] Judge William A. Culpepper, retired, participated in this decision as Judge Pro Tempore by appointment of the Louisiana Supreme Court.
[2] In the usual compensation case arising under LSA-R.S. 23:1221 or 1225, it is the employer who seeks to utilize the testimony of the vocational rehabilitation expert who, according to LSA-R.S. 23:1226, although paid by the employer, is to "assist the employee in his job placement or vocational training."

We cannot help but ask whether the employer's affinity for using the rehabilitation expert's testimony is somehow related to how the consultant is selected and compensated. Although we do not propose to conduct a lengthy ex parte study, it is difficult to ignore the apparent differences in treatment allotted claims files by certain rehabilitation experts, whose thoroughness and conclusions seem to correlate more to the retainer's interest than to any other factor. Compare, e.g., the limited work expended by the rehabilitation consultant in this case, where it was in the employer's interest to conclude that claimant is disabled, to the far more thorough job performed in the previously unpublished Clark v. Town of Basile, 93-519, La.App. 3d Cir., February 2, 1994 (multiple contacts with claimant; multiple contacts with treating physician; extended efforts made to find sedentary employment for claimant in forty mile radius; continuing education materials procured by consultant and transmitted to claimant; employability in employer's interest), which follows this opinion as an appendix. Virtually the only similarity in the consultant's testimony was that it favored the employer's position.
In light of our holding today, predicated on the hearing officer's failure to abide by the mandatory provisions of LSA-R.S. 23:1226D, we need not examine the potential obligations of an employer or insurer to retain independent rehabilitational advice for the injured worker, when the counselor retained pursuant to LSA-R.S. 23:1225 to assist the injured worker might be called to testify against his client in the context of a LSA-R.S. 23:1221 or 1225 proceeding. Some day, though, this or another tribunal may be asked to consider whether under certain circumstances a claimant's due process rights might not be unconstitutionally infringed upon by a workers compensation scheme that in practice permits the employer to gain advantage, possibly in the context of a rehabilitation consultant who has demonstrated prejudice through years of testimony or whose firm is controlled or owned by an employer or workers compensation insurer.