690 So.2d 792 (1996)
Myrtle FOSTER, PlaintiffAppellee,
v.
LIBERTY RICE MILL, DefendantAppellant.
No. 96-438.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
Rehearing Denied February 20, 1997.
*794 Randall Scott Iles, for Myrtle Foster.
Katherine Marie Loos, Lafayette, for Liberty Rice Mill.
Before DOUCET, C.J., and SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
In this workers' compensation proceeding, the employer-appellant asks that we find manifest error and reverse its being found liable for temporary total disability benefits, penalties and attorney fees, plus certain post-judgment medical expenses. Finding no manifest error, we affirm the judgment of the hearing officer and award an additional $3,500.00 for legal expenses incurred by claimant in defending this appeal.

FACTS
Myrtle Foster, born August 28, 1945, injured her left wrist while acting in the course and scope of her employment with Liberty Rice Mill on December 18, 1991. Ms. Foster, who packaged twenty (20) pound increments of chute-dropped rice in burlap bags, was sent by her employer to see Dr. Suresh Patel, the company doctor. In January 1992, Dr. Patel referred Ms. Foster to orthopaedic surgeon Dr. Roland Miller.
Ms. Foster worked light duty until February 1, 1992, when, according to defendant, she was asked to take a leave of absence since her employer had no light duty work to offer her.
Dr. Miller first saw claimant on February 19, 1992, and diagnosed her with De Quervain's syndrome, a disabling neurological condition afflicting claimant's left hand, wrist, and arm. After Dr. Miller's conservative treatment proved unsuccessful, nerve release surgery recommended by Dr. Miller on April 6 was performed five months later, on September 22, 1992. At first, the results of Dr. Miller's surgery appeared encouraging, and Dr Miller believed that Ms. Foster might be able to return to work after a several month convalescence. Consistent with his initial optimism, Dr. Miller's reports issued one week, two weeks, six weeks, two and a half months, and six months after the surgical release indicated gradual improvement. By March 1993, Ms. Foster's condition improved to the point that her physical therapy could be decreased to once a week. If Ms. Foster's condition continued to improve at her current rate, Dr. Miller believed that she might be *795 able to return to work by the time of her next appointment in April 1993.[1]
Unfortunately, Ms. Foster's case took a turn for the definite worse as of April 28, 1993, by which time her symptoms unmistakably had begun to reappear.[2] According to Dr. Miller, Ms. Foster "had been doing very well up until approximately two weeks ago when she started having some catching again in the wrist and this has happened several times and caused some pain."
This controversy arose when Ms. Foster's employer reduced her benefits the following summer. Ms. Foster had received TTD benefits at the rate of $164.69 per week, based on an average weekly wage of $247.03, until August 30, 1993, when her benefits were converted to SEB and reduced to $31.35 per week on the avowed grounds of a medical report by one of the company's two physicians and a report from a vocational rehabilitation consultant retained by the employer.[3]
A Form 1008 was filed by Ms. Foster on September 21, 1993, in which she sought TTD or permanent total disability benefits, and medical treatment. Following Liberty Rice Mill's answer on October 21, 1993, and several continuances, the matter was tried on March 15, 1995. The hearing officer took the matter under advisement. After considering the testimony presented by Ms. Foster, vocational rehabilitation consultants, live testimony, employees of allegedly prospective employers, and of Drs. Miller and Morrow, the hearing officer rendered judgment on January 5, 1996, awarding claimant TTD, penalties, and $7,500.00 in attorney fees. The judgment additionally awarded Ms. Foster medical treatment in accordance with a July 20, 1995, medical report requested by the hearing officer while the matter was under advisement. This appeal followed.

ISSUES PRESENTED
Issues presented by the employer for our review include:
1) whether the hearing officer erred in concluding that claimant sustained her burden of proof in proving her entitlement to temporary total disability (TTD) benefits with clear and convincing evidence, rather than supplemental earnings benefits (SEB);
2) whether certain medical treatments recommended by Dr. Robert Morrow in his report of July 20, 1995, should be paid for by the employer and its insurer; and
3) whether the hearing officer erred in awarding penalties and attorney fees.

Temporary Total Disability (TTD) Benefits
By its first assigned error, the employer contends that the hearing officer erred in awarding claimant TTD benefits. The employer maintains that Ms. Foster's condition had improved in the months or years following the accident to the point that her employer was entitled to reduce her benefits to SEB.
The burden of proof required of a claimant to recover TTD benefits is set forth in Tanner v. International Maintenance Corp., 602 So.2d 1133 (La.App. 1 Cir.1992), cited by appellant:
LSA-R.S. 23:1221(1) provides, in pertinent part:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and *796 two-thirds percent of wages during the period of such disability.
* * * * * *
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (emphasis added).
The above quoted statute reflects legislative amendments which were made in 1989, effective January 1, 1990. These amendments set forth a more stringent standard of proof for a claimant seeking disability benefits based on a temporary total disability. Prior to the 1989 amendments, the burden of proof in a claim for temporary total disability benefits was by a "preponderance of the evidence". However, under the statute, as amended, the claimant must prove the nature and extent of his disability by clear and convincing proof, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment.
The statute contemplates that an employee, as here, may be able to prove by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. The 1989 amendments to LSA-R.S. 23:1221(1) did not alter this burden of proof. However, in the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant's demand for temporary total compensation benefits, must fail.

LSA-R.S. 23:1031 A provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
This statute sets forth the threshold requirements which must be met by a claimant to fall within the coverage of the Workers' Compensation Act. Once an employee satisfies these threshold issues required by LSA-R.S. 23:1031, he has proven that he is covered by the workers' compensation laws. The employee may be entitled to medical benefits pursuant to LSA-R.S. 23:1203 and/or disability benefits pursuant to LSA-R.S. 23:1221. To receive disability benefits based on a temporary total disability, however, the claimant must satisfy the requirements of LSA-R.S. 23:1221(1), by clear and convincing evidence.
Id. at 1137 (emphasis ours).
Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to SEB benefits if she is unable to earn 90% of her pre-accident wages. La.R.S. 23:1221(3); See Mitchell v. AT&T, 27,290 (La.App. 2 Cir. 8/28/95); 660 So.2d 204, writ denied, 95-2474 (La.12/15/95); 664 So.2d 456.
The manifest error-clearly wrong standard of appellate review applies to findings of fact in workers' compensation proceedings. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733; Alexander v. Pellerin Marble and Granite, 93-1698 (La.1/14/94); 630 So.2d 706. As the supreme court has observed, this standard is a heavy one, particularly when a hearing officer's findings are drawn from an opportunity to observe firsthand the demeanor of witnesses called to the stand.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and *797 where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.

When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989)(emphasis ours) (citations and notes omitted).
Defendant places great weight upon the opinion of Dr. Roland Miller, one of the physicians to whom it had referred claimant, that Ms. Foster had reached maximum medical improvement by August 1993. Clearly, even Dr. Miller's earlier reports do not establish manifest error on the part of the hearing officer in failing to find that claimant had reached MMI earlier. Dr. Miller's March 1993 report merely expressed his hope that when Ms. Foster returned "in six weeks' time, we will see what we can do as far as recommending perhaps a part-time job or light duties" (emphasis ours); and by April 28, 1993, when Dr. Miller tentatively suggested that "[i]f a position was available that was truly light duty, nonstressfull [sic] to the left hand, then I feel that she would be able to perform [it]," but that in the meantime, Ms. Foster would be "continuing to try to build up the strength of her hand, wrist and forearm." Thus, the record discloses no manifest error as to the hearing officer's award of TTD benefits through April 28, 1993.
Nor does the record disclose that the hearing officer manifestly erred in awarding claimant TTD benefits through at least June 9, 1993. Responding promptly to Dr. Miller's tentative April 28 suggestion that vocational possibilities should be explored, the employer on May 12, 1993, sent Ms. Kay Martin of Richard and Associates to visit Dr. Miller. According to Dr. Miller's notes of that day, he "went over a list of things that Myrtle [Foster] could and could not do," and there was language suggesting that claimant could return to work by May 12. Claimant was not present at this meeting, but did see Dr. Miller again on June 9, 1993, about seven months post-surgery. On this date, Dr. Miller noted that Ms. Foster still had "some stiffness with radial deviation" and would have, according to Dr. Miller, "some permanent residual" loss from her accident and "tenderness over the extensor tendons to the thumb at the wrist level." Although this tenderness was "much milder than it had been pre-operatively," Dr. Miller declined to retreat from her care but instead decided to "allow her two more months for recovery, and if by next visit she is not recovered, then what she will have will be a permanent residual..." (emphasis ours), making a MMI determination more probable. Thus, by *798 June 9, 1993, it was clear that Ms. Foster had not reached MMI. In fact, in response to defendant's June 9 question of whether Ms. Foster had reached maximum medical improvement, Dr. Miller indicated that she had not, but rather that "perhaps a few more months would be required." (Emphasis ours.) Thus, even according to Dr. Miller, claimant had not reached MMI by June 9.
Which brings us back to defendant's argument that Ms. Foster had reached maximum medical improvement by August 18, 1993, based upon one sentence contained in Dr. Miller's report of that date. Indeed, one sentence contained in that one medical report does explicitly state that Dr Miller was of the opinion that Ms. Foster had reached maximum medical improvement by August 18, 1993. However, another report suggests that Ms. Foster "never really reached complete healing." At any rate, as will be seen presently, given the strength of the totality of the evidence, including the contradictory testimony of Dr. Morrow, who consistently has sought additional treatments for claimant, and of claimant, who has endeavored to obtain them, Dr. Miller's August 18 report alone is inadequate to show that the hearing officer manifestly erred in decreeing claimant eligible for TTD benefits.

Unable to Engage in Any Employment?
Alternatively, the employer-appellant asks that we find manifest error in the hearing officer's conclusion that claimant is not able to engage in any employment as required to recover TTD, at least not by clear and convincing evidence. As noted above, for accidents occurring since 1989, a claimant seeking temporary total disability benefits is required to establish with clear and convincing evidence that her physical disability precludes her from engaging in any employment. La.R.S. 23:1221(1); Tanner, 602 So.2d 1133.
Under applicable standards of appellate review, we are not persuaded by defendant's argument. The conclusion reached by the hearing officer was supported by claimant's testimony and physical appearance on the date of trial, and by Dr. Morrow's opinions. Ms. Foster, born on August 28, 1945, was a lifelong resident of Forked Island, Vermilion Parish, Louisiana, and an eighth grade graduate. She testified at trial without contradiction that, whereas before her surgery she could "eat a steak and cut it myself," afterwards she could not even take a bath, shave her legs, sweep, or vacuum without help. This testimony, we find, clearly supported the hearing officer's finding that claimant was physically unable to engage in any gainful employment.
Additionally, on June 26, 1995, after the hearing was conducted, the hearing officer referred Ms. Foster back to Dr. Morrow for a re-evaluation. When Dr. Morrow saw claimant on July 20, 1995, he saw primary and secondary symptoms of claimant's earlier De Quervain's Syndrome. In addition to wondering aloud about why claimant had not been tested following his last examination of November 2, 1993, almost two years earlier, Dr. Morrow referred Ms. Foster to Dr. Paul Hubbell. Dr. Morrow's report of July 20, 1995, also stated:
At this time, I would give her a permanent functional impairment of the left upper extremity of 50% with this being a whole person impairment of 30%. At this time, I don't think that she is capable of performing work with this left upper extremity. [Emphasis ours.]
According to defendant, Dr. Morrow's reports alone did not constitute clear and convincing evidence of Ms. Foster's total disability because the emphasized language only declared a portion of Ms. Foster's body disabled as of the date of trial. We disagree. Rather, after observing that the manifest error rule extends to credibility determinations based upon conflicting medical testimony, Lirette v. State Farm, 563 So.2d 850 (La.1990) and authority therein, we conclude that the hearing officer was not wrong in understanding the emphasized language to mean that Ms. Foster's work-related disability prevented her from performing any kind of work. Therefore, on the strength of Dr. Morrow's reports and the hearing officer's eyewitness credibility assessments of claimant and the other witnesses, we decline to second-guess the hearing officer's conclusion that claimant was *799 temporarily totally disabled from engaging in any employment. From the totality of the evidence, the hearing officer reasonably could have concluded that claimant was totally disabled from performing any work.
The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). This factual finding should be given great weight and should not be overturned absent manifest error. Prim [v. City of Shreveport, 297 So.2d 421 (La.1974)] supra; Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). See, also, Thomas v. Highlands Insurance Company, 617 So.2d 877 (1993).
Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).[4] "Disability can be proven by medical and lay testimony." Id. at 280.
Given the conflicting evidence, we cannot say that the hearing officer manifestly erred in choosing to credit the testimony of Dr. Morrow and Ms. Foster, whose demeanor the hearing officer could observe firsthand, in determining that claimant, a common laborer, was in fact totally disabled from engaging in any work.
When an injured manual laborer is disabled at time of trial from performing physical labor and is still undergoing medical testing and treatment with an indefinite recovery period, he is entitled to benefits of temporary total disability. See Brewster v. Manville Forest Products Corp., 469 So.2d 340, 346 (La.App. 2d Cir. 1985). See also Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La. App. 3d Cir.), writ denied, 497 So.2d 312 (La.1986).
Pickett v. Stine Lumber Co., 93-1534, p. 9 (La.App. 3 Cir. 6/1/94), 640 So.2d 769, 773.
Certainly, there is nothing contained in the testimony of the vocational rehabilitation specialists retained by defendant that mandates a contrary conclusion.[5]
The trier of fact may accept or reject any part of a witness' testimony. Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555 (La.App. 4th Cir.1992). The trier of fact may choose to reject all of the testimony of any witness or may believe and accept any part or parts of a witness' testimony and refuse to accept any other part or parts thereof. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3rd Cir.1990); Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986).
Welch v. Winn-Dixie Louisiana, Inc., 94-2331, p. 16 (La.5/22/95); 655 So.2d 309, 317.
On prior occasions, this court has had occasion to decry the apparent conflict of interest which accompanies the retention by the employer of a "rehabilitation expert who, according to LSA-R.S. 23:1226, although paid by the employer, is to `assist the employee in his job placement or vocational training.'" [Emphasis omitted.] City of Crowley v. Comeaux, 93-1116, p. 5 (La.App. 3 Cir. 4/6/94); 638 So.2d 658, 661 n. 2, writ denied, 94-1184 (La.6/24/94); 640 So.2d 1355. See also Maxie v. Brown Industries, Inc., 95-19 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, writ denied, 95-1630 (La.10/6/95); 661 So.2d 469. Indeed, certain members of this court have even gone so far as to explicitly suggest that the supreme court of this state exercise its supervisory jurisdiction and determine once and for all whether this practice should be permitted to continue. See, e.g., Judge *800 Laborde dissent in Autin v. Hessmer Nursing Home, 93-1492 (La.App. 3 Cir. 6/1/94); 638 So.2d 693 (Laborde, J., dissenting); Crowley, 638 So.2d 658.
In this case, we need not go so far. Instead, we merely conclude that when in a workers' compensation proceeding a hearing officer chooses to credit a claimant's version of events or to discredit an employer's version on the basis of the source of a vocational rehabilitation consultant's retainer, its decision to do so will not lightly be overturned.
Here, because the hearing officer did not manifestly err in choosing to accept claimant's version of events over that presented by defendant, we affirm claimant's award of TTD benefits, which was based on credibility determinations of expert and lay witnesses, and claimant's appearance and demeanor. Given the weight of the countervailing evidence, we do not find clearly wrong the hearing officer's finding less than convincing the professional conclusions of the rehabilitation personnel hired by the employer.

Penalties and Attorney Fees
Defendant suggests that even if its case failed to rebut claimant's allegations that Ms. Foster was entitled to TTD benefits, it was at least adequate to preclude an award of penalties and attorney fees. Claimant opposes this suggestion and seeks an additional $7,500.00 in attorney fees in connection with defending this appeal.
The determination of whether an employer should be cast with penalties and attorney's fees is essentially a question of fact and the trial court's finding shall not be disturbed absent manifest error. Bradley v. Justiss Oil Co., Inc., 618 So.2d 646, 650 (La.App. 2 Cir.1993); Slate v. Travelers Ins. Co., 556 So.2d 903 (La.App. 3d Cir.1990). In Chelette v. American Guar. & Liability Ins., 480 So.2d 363 (La.App. 3 Cir.1985), this court set forth the standards generally used for awarding penalties and attorney's fees. In awarding statutory penalties, the test to be applied is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Attorney fees, on the other hand, are to be imposed if the insurer is found to be arbitrary, capricious or without probable cause in its failure to pay a claim within 60 days after receipt of written notice of the claim. Id.; LSA R.S. 23:1201.2. A worker's compensation claim is "reasonably controverted," precluding imposition of penalties, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits. Bradley, supra, at 651.
Menard v. Winn Dixie Louisiana, Inc., 93-1497, p. 14 (La.App. 3 Cir. 6/1/94), 640 So.2d 775, 784.
Defendant suggests that its disruption of claimant's benefits was supported by substantial evidence: Dr. Miller's opinion and the vocational "rehabilitation" efforts of Ms. McSpadden. Claimant, on the other hand, maintains that sanctions are due for the delays in medical treatment long overdue and for defendant's alleged resort to sham rehabilitation.
In this case, we agree with the claimant. Penalties and attorney fees are warranted in this case, if only because of the four-month delay between Dr. Miller's recommendation of surgery and Dr. Morrow's first evaluation of claimant's condition. The penal provisions of this state's workers' compensation act are applied not only against employers who untimely pay weekly benefits, but also against employers who fail to timely deliver competent medical attention. Savoy v. McDermott, Inc., 520 So.2d 888 (La.App. 3 Cir.1987); Dupre v. Sterling Plate Glass & Paint Co., 344 So.2d 1060 (La.App. 1 Cir.), writ denied, 347 So.2d 246 (La.1977).
Dr. Miller first saw Ms. Foster February 19, 1992, and diagnosed in her left wrist a condition called De Quervan's Syndrome. According to Dr. Miller's notes of that appointment, De Quervan's Syndrome is "usually remedial to conservative treatment but it might take some time for [Ms. Foster] to recover." Initially, Dr. Miller treated Ms. Foster conservatively, but when a splint, anti-inflammatory medications, and injections proved inadequate, Dr. Miller recommended surgery on April 6, 1992.
*801 Apparently, rather than provide the surgery recommended by Dr. Miller, to whom claimant had been referred by its own doctor, the employer referred claimant to a second orthopaedic surgeon of its choosing, Dr. Robert Morrow. Dr. Morrow first saw claimant on August 14, 1992. So concerned was Dr. Morrow that the already nine-month delay in proceeding with Ms. Foster's surgery had jeopardized her chance of a speedy and full recovery, that he recommended that the surgery long recommended by Dr. Miller take place "as soon as the surgery can be set up due to the longevity of her symptoms."
In light of the employer's untimely provision of medical benefits in this case, we affirm the hearing officer's penal awards and award an additional $3,500.00 for attorney fees in connection with this appeal.

Medical Expenses
Finally, the employer asks that we reverse an order by the hearing officer requiring that it provide claimant with certain medical treatment recommended by Dr. Morrow in his July 1995 post-trial report. That report suggested that claimant be referred to a specialist, Dr. Paul Hubbell, so that Dr. Hubbell might alleviate claimant's continuing objective symptoms associated with her De Quervain's Syndrome (swelling, reduced body temperature, and osteoporosis) and with possible complications from her release operation. According to Dr. Morrow, although success could not be guaranteed in Ms. Foster's case, it was worth a try since Dr. Hubbell had enjoyed previous success with other cases similar to claimant's.
In its appeal to this court, defendant does not suggest that any other cause may account for claimant's disabling symptoms. Rather, it complains that it should have been given an opportunity to cross-examine Dr. Morrow's July 1996 findings that further medical treatment was warranted.
Under the circumstances, we are unable to fault the hearing officer's reaction to Dr. Morrow's July report, which expressed considerable alarm at claimant's not having been treated sooner. An employer who fails to properly investigate its employee's medical status or who blindly relies upon an earlier medical report in the face of adverse medical information has only itself to blame for the consequences of its inaction. See generally, Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Kelone v. Pinecrest State School, 626 So.2d 89 (La.App. 3 Cir.1993). We conclude that it was not the hearing officer's action, but the employer's inaction (Dr. Miller had not seen Ms. Foster since August 1993) that motivated the hearing officer to act so decisively.
Consequently, we affirm the hearing officer's order for the recommended medical treatments and mileage reimbursement. Both are required by La.R.S. 23:1203, which provides in pertinent part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal....
. . . . .
C. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee.... [6]

*802 DECREE

For the foregoing reasons, the judgment of the hearing officer is affirmed, at defendant's costs, together with $3,500.00 in attorney fees in connection with this appeal.
AFFIRMED AS AMENDED AND RENDERED.
AMY, J., concurs.
NOTES
[1] In Dr. Miller's words, "When I see her back in six weeks' time, we will see what we can do as far as recommending perhaps a part-time job or light duties."
[2] In fact, in hindsight, it would seem that the apparently favorable trend reported by Dr. Miller had begun to reverse by January 29, 1993, when swelling in Ms. Foster's left forearm prompted Dr. Miller to recommend physical therapy.
[3] The consultant had allegedly located jobs that were both physically and geographically suitable for Ms. Foster's condition, and the SEB benefits included an offset of $5.00 per hour, the base pay of the positions allegedly available to claimant.
[4] Defendant's argument relies heavily on Dr. Miller's alleged belief in March 1993 that claimant was able to return to work; however, as noted above Dr. Miller's (subsequent) April 28 observation removed much of the persuasive force of the argument insofar as it only suggested the possibility that Ms. Foster might be able to return to the workforce.

While it is true that Dr. Miller's opinion in isolation arguably might have led the hearing officer to render judgment adverse to claimant, since arguably Dr. Miller was of the opinion that claimant could return to some sort of light duty work, the fact of the matter is that the hearing officer could have and did rely upon claimant's testimony and Dr. Morrow's opinion to arrive at an opposite conclusion, and she did so after observing firsthand claimant's disabled state.
[5] Ignoring Dr. Miller's June 9 indication that a "few more months" might be required before claimant would reach MMI, on the very next day, June 10, 1993, Ms. Doreen McSpadden, employed by FARA Healthcare Management of Lafayette, a pseudonym for Richard and Associates, set out to find work.
[6] In passing, we further note our disagreement with the suggestion contained in defendant's second assigned error that it was prejudiced by the hearing officer's decision to request of Dr. Morrow, one of defendant's experts, a medical opinion following the hearing.

It is a well established principle of law that in a worker's compensation case the trial court has authority to engage an expert witness to advise the court. Gary v. Dimmick Supply Co., 427 So.2d 33 (La.App. 3rd Cir.1983). Section 1123 of the worker's compensation statute provides in pertinent part that the reports of such court appointed experts "... shall be prima facie evidence of the facts therein stated...."
Latiolais v. Jernigan Bros., Inc., 520 So.2d 1126, 1129 (La.App. 3 Cir.1987).
The testimony of which defendant complains was obtained from defendant's own expert, and the same conclusion would have resulted even without Dr. Morrow's July 20 report, as the other evidence, particularly claimant's visible demeanor and the language of the other medical reports, alone would have warranted the conclusions reached by the hearing officer.